United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY AVERY,<br><br>   Plaintiff,<br><br>  v.<br><br>RAFAEL ARREOLA, et al.,<br><br>   Defendants. | Case No. 22-cv-08940-SI<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 60 |

Defendants have moved for summary judgment on statute of limitations grounds. The Court held a hearing on April 19, 2024. For the reasons set forth below, the Court GRANTS defendants' motion.

## BACKGROUND

Plaintiff Jeffrey Avery brings this civil rights complaint against Bay Area Rapid Transit ("BART") police officers Rafael Arreola, N. Washam, M. Norriega, and R. Martinez (collectively, "defendants").[1] The operative complaint lists three causes of action under 42 U.S.C. § 1983, for violation of plaintiff's Fourth Amendment rights: false arrest, excessive force, and unlawful search. *See* Dkt. No. 32 ("SAC"). Although some of the following facts are contested, the Court recites them here as context for the summary judgment motion. The Court recites Avery's version of the events because Avery is the non-moving party.

Avery is African American and has been a BART employee for nearly 28 years. Dkt. No. 61-1 ("Avery Decl.") ¶¶ 1-2. Since 2010, he has worked in BART's maintenance department, which is responsible for ensuring the BART tracks are operating and functioning well and for fixing the tracks to ensure that no derailments occur. *Id.* ¶ 7.

---

[1] Plaintiff's papers spell his first name as both "Jeffrey" and "Jeffery." *See, e.g.*, Dkt. No. 61-1 at 4. The Court will use the spelling contained in the case caption.

In October 2020, Avery was working the graveyard shift and then overtime in Oakland, California. *Id.* ¶ 3. His second shift ended at 2:00 p.m., and he decided to rest in his van because he was exhausted. *Id.* Around 4:00 p.m., he was "half asleep" in the vehicle; he had left the sliding door partially ajar because it was a warm day and he wanted to let some air in. *Id.* ¶ 4. Out of nowhere, he heard someone "yelling for someone to get out of the vehicle with their hands up." *Id.* ¶ 5. Initially, he didn't know what was going on and assumed it had to do with someone else. *Id.* He then turned around and saw several officers pointing weapons at him. *Id.* A male BART officer was pointing his handgun directly at Avery. *Id.* ¶ 6. A female BART officer was pointing her taser at him. *Id.* Avery states, "Moments before I had literally been half asleep. I had no idea what was going on but I was afraid that these officers were going to kill me." *Id.* "Within minutes [Avery] was outside the car in handcuffs and being grilled by officers while [he] explained that [he] was a BART employee." *Id.* ¶ 7. The officers told him they were looking for a potential car thief. *Id.* Avery noticed other people in the parking lot and, right next to him, was another gentleman who was not African American and who was not pulled out of his car at gunpoint. *Id.* ¶ 8. Avery "was very shaken by the incident." *Id.* ¶ 9. He states, "I thought I could have been killed for doing literally nothing – for just resting in my car while waiting for my next shift." *Id.*

In the following weeks, Avery filled out an "Unusual Occurrence Report" regarding the incident, "as is BART protocol. In the report, [he] explained what BART officers had done to [him] in the parking lot." *Id.* ¶ 10. He also talked to a Union Steward, who told him that he "could and should file an administrative claim with the Office of the Independent Police Auditor (OIPA) so that they investigated the incident." *Id.* ¶ 11. He states, "I understood that as a BART employee, I could make a complaint against BART police officers, who are also BART employees, by reaching out to OIPA. I believed that they would hold the officers accountable for pulling a gun on a fellow employee who had done nothing wrong." *Id.*

On November 9, 2020, Avery called OIPA and spoke with Patrick Caceres. *Id.* ¶ 12. Avery "told him what occurred and told him that my civil rights had been violated by BART police. He asked [Avery] questions and took down information over the phone. [Avery] never saw the actual OIPA complaint that was generated." *Id.* At this time during the Covid-19 pandemic, everything

1    was being done over the phone and in-person meetings were not allowed. *Id.*

2    On September 9, 2021, Avery received an email from OIPA with the results of the
3    investigation. *Id.* ¶ 13. OIPA found some of Avery's allegations "Exonerated," some "Unfounded,"
4    and some "Sustained." Dkt. No. 60-2, Bloom Decl., Ex. A (also filed as Avery Decl., Ex. 1). With
5    regard to the allegation of excessive/unnecessary use of force, OIPA reached a finding of
6    "exonerated" for two officers. *Id.* at 1. With regard to the allegation of excessive/unnecessary use
7    of force (TASER), OIPA reached a finding of "unfounded" for an officer.[2] *Id.* The report was
8    signed by Patrick J. Caceres, Independent Police Investigator. *Id.* at 2.

9    Avery's declaration does not state precisely when in October 2020 the incident occurred.
10   *See generally* Avery Decl. In the SAC, Avery alleged the incident occurred on October 16, 2020.
11   SAC ¶ 10.

12   On December 16, 2022, plaintiff filed this lawsuit in federal court against BART police
13   officers Does 1-25. Dkt. No. 1. Plaintiff did not serve defendants by the deadline specified in the
14   federal rules. *See* Dkt. No. 14. On March 31, 2023, the Clerk's Office issued the summons. Dkt.
15   No. 19. On June 26, 2023, plaintiff voluntarily filed a first amended complaint. Dkt. No. 25. On
16   July 18, 2023, with leave of the Court, *see* Dkt. No. 30, plaintiff filed the SAC, naming the four
17   individual defendants. Dkt. No. 32.

18   Defendants moved to dismiss on statute of limitations grounds. On October 24, 2023, the
19   Court granted in part and denied in part the motion to dismiss the SAC. Dkt. No. 47. The Court
20   granted the motion as to plaintiff's allegations that the statute of limitations should be tolled because
21   plaintiff lacked mental capacity for a period of roughly six months after the incident. The Court
22   granted leave to amend these allegations. The Court denied the motion to dismiss based on equitable
23   tolling grounds related to the OIPA complaint, without prejudice to renewal on a fuller factual
24   record. Avery did not amend the complaint, making the SAC the operative complaint.

25   Defendants now move for summary judgment, renewing their argument that Avery filed this

---

[2] Counsel for plaintiff represented at the hearing that OIPA sustained at least one excessive force finding against the officers, but that is not borne out by the papers. *See* Dkt. No. 60-2, Bloom Decl., Ex. A at 1. OIPA sustained an allegation of "Policy/Procedure – Body Worn Camera Activation" and an allegation of "Policy/Procedure – Use of Force Reporting." *Id.*

1  claim too late and that equitable tolling does not apply to the period in which Avery's OIPA
2  complaint was pending.

## LEGAL STANDARDS

### I.   Summary Judgment (Fed. R. Civ. P. 56)

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)).

## II.   Statute of Limitations and Equitable Tolling

The statute of limitations for claims under 42 U.S.C. § 1983 is "the personal injury statute of limitations of the state in which the cause of action arose." *Alameda Books, Inc. v. City of Los Angeles*, 631 F.3d 1031, 1041 (9th Cir. 2011) (citations omitted). In California, the statute of limitations for personal injury claims is two years. *Id.* at 1041 & n.8; *Andonagui v. May Dept. Stores Co.*, 128 Cal. App. 4th 435, 440 (2005) (citing Cal. Civ. Proc. Code § 335.1).

Federal courts also "borrow our rules for equitable tolling of the period from the forum state," here, California. *See Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993) (citations omitted). Courts in California apply a three-pronged test to determine whether a plaintiff is entitled to equitable tolling: "(1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to the defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim." *Lucchesi v. Bar-O Boys Ranch*, 353 F.3d 691, 694 (9th Cir. 2003) (citation omitted). Analysis of each prong requires a "*practical* inquiry" related to the "*specific* circumstances of the prior claim[.]" *Cervantes*, 5 F.3d at 1276. "Application of the three-part test is mandatory." *Id.* at 1275-76.

## DISCUSSION

After reviewing the evidence on file, and viewing this evidence in the light most favorable to Avery, the Court concludes that the undisputed facts show Avery is not entitled to equitable tolling under California's three-pronged test. Avery cannot show that his OIPA complaint provided timely notice to the defendants of the filing of a first claim. The Court need not and does not reach the second and third prongs of the equitable tolling test.

Plaintiff's position is that his complaint is timely because, even though he filed suit roughly two months late, the 298 days that his OIPA complaint was pending should equitably toll the statute of limitations. Plaintiff, as the one seeking an exception to the statute of limitations, will bear the burden at trial of showing he is entitled to equitable tolling. Although the statute of limitations is an affirmative defense, "[a]s the Ninth Circuit has long explained, 'the party seeking the benefit of

5

the avoidance of the statute of limitations carries the burden of proof to establish the elements, . . . and all presumptions are against him since his claim to exemption is against the current of the law and is founded on exceptions.'" *Nguyen v. Nissan N. Am., Inc.*, 487 F. Supp. 3d 845, 856 (N.D. Cal. 2020) (quoting *NLRB v. Don Burgess Constr. Corp.*, 596 F.2d 378, 383 n.2 (9th Cir. 1979)) (internal brackets omitted); *see also In re Marriage of Zimmerman*, 183 Cal. App. 4th 900, 912 (2010), *as modified* (Apr. 23, 2010) ("The petitioner bears the burden of proving the applicability of equitable tolling.").

Here, defendants have come forward with evidence that the OIPA complaint did not put BART on notice of a potential legal claim against it within the two-year statutory period. Defendants filed a declaration from Steven Shatz, who has been employed in BART's Risk and Insurance Management Department since May 2015 and who "routinely review[s] and manage[s] the processing of government tort claims against BART, including preparation of notices to claimant's attorneys about BART's responses to claims presented." Dkt. No. 60-1 ("Shatz Decl.") ¶ 1; *see also* Dkt. No. 68 ("Am. Shatz Decl.") ¶ 1. Shatz states that his office did not receive the summons and complaint in this case until more than two years after the incident. Shatz Decl. ¶ 2; Am. Shatz Decl. ¶ 2.[3] He states that "[r]eceipt of the Summons and Complaint represented my first knowledge of plaintiff's alleged claim against BART." Shatz Decl. ¶ 2. Shatz also states that he "had no prior knowledge of any administrative grievance and/or Government Tort Claim to BART that was filed by Plaintiff. BART Risk Management and BART's Office of Independent Police Auditor (OIPA) do not share information about complaints or claims received and OIPA's purpose and mission is unrelated to BART's risk management and claims management operations. Complaints made to OIPA are not communicated to BART's Risk Management."[4] *Id.* ¶ 4.

---

[3] The Shatz declaration filed with defendants' summary judgment motion states that Shatz received the summons and complaint in this case on or about December 16, 2022 (i.e., the date this lawsuit was filed). Shatz Decl. ¶ 2. A review of the docket shows that plaintiff did not timely serve the complaint, and the summons did not issue until March 31, 2023. *See* Dkt. No. 19. At the hearing, the Court asked how Shatz could have received notice of the lawsuit in December 2022 and ordered that defendants file a clarifying declaration. Defendants subsequently filed an amended declaration stating that BART's District Secretary's Office received the summons and complaint in this case on or about May 24, 2023. *See* Am. Shatz Decl. ¶ 2.

[4] The parties do not dispute that Avery filed no government tort claim following the incident.

6

Defendants have also filed a declaration from Russell G. Bloom, the Independent Police Auditor for BART for 9.5 years. Dkt. No. 60-2 ("Bloom Decl.") ¶ 1. Bloom states that OIPA's mission is "to provide all members of the public with effective and independent oversight of the BART Police Department by conducting unbiased and thorough independent investigations." *Id.* ¶ 4. Bloom explains that the OIPA process "does not include any provision or opportunity for compensation of a complaining party, even if their complaint is substantiated." *Id.* ¶ 6. Nor does the OIPA process include a "legal remedy." *Id.* ¶ 8. Bloom states that "OIPA is independent of the BART Police Department and of BART's Risk Management Division." *Id.* ¶ 9. Bloom confirms what Shatz stated, that "[c]omplaints received by OIPA are not communicated to or shared with BART Risk Management personnel, nor is the fact that a complaint about police conduct has been received." *Id.* ¶ 11.

Plaintiff counters none of defendants' evidence. He submits a declaration nearly identical to the one he filed at the motion to dismiss stage, *see* Dkt. No. 46, and he submits a copy of the same OIPA findings that defendants attach to their motion. In his opposition brief, plaintiff does not address the argument that an OIPA complaint does not qualify as a legal claim under the first prong of equitable tolling because it is not designed to provide a legal remedy to the complainant. *See* Opp'n at 4.

The first prong of equitable tolling requires "timely notice to the defendant in filing the first claim." *Lucchesi*, 353 F.3d at 694. Defendants' argument is that the OIPA complaint does not qualify as a "claim" for purposes of equitable tolling. Although the California Supreme Court has "stop[ped] short of categorically conditioning tolling on a plaintiff's pursuit of a viable remedy," *Saint Francis Memorial Hosp. v. State Dep't of Public Health*, 9 Cal. 5th 710, 725 (2020), "courts have adhered to a general policy which favors relieving plaintiff from the bar of a limitations statute when, possessing several legal remedies he, reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage." *Addison v. California*, 21 Cal. 3d 313, 317 (1978). The types of cases in which courts have found that equitable tolling *may* apply include:[5] a plaintiff who

---

[5] A number of these cases were decided at the pleading stage, so the question before the court was whether the allegations, viewed in the light most favorable to the plaintiff, could support

United States District Court
Northern District of California

first pursued administrative remedies for reinstatement of his employment, prior to filing his 1983 action in federal court alleging a conspiracy that led to his termination, *see Cervantes*, 5 F.3d 1273; a plaintiff who filed damages claims under the California Tort Claims Act, followed by a suit in federal court, before properly bringing suit in state court, *see Addison*, 21 Cal. 3d 313; and a plaintiff who filed a wrongful death claim under the Tort Claims Act before suing in federal court, *see Lucchesi*, 353 F.3d 691.

Unlike administrative efforts before the state Civil Services Commission (*Cervantes*), the filing of a claim under the California Tort Claims Act (*Addison* and *Lucchesi*), or the filing of a civil suit in another forum (*Addison*), the undisputed evidence here shows that plaintiff's OIPA complaint was not a "legal remedy . . . designed to lessen the extent of his injuries or damage." *See Addison*, 21 Cal. 3d at 317.  Defendants have presented uncontroverted evidence that the purpose of OIPA is to conduct independent investigations into allegations of BART police misconduct, not to provide damages or other legal remedies to individual complainants.  Plaintiff has not stated that he thought otherwise.  The OIPA complaint here is far more like the complaint filed with the San Francisco Police Department's Office of Citizen's Complaints in *Stone v. City and County of San Francisco*, 735 F. Supp. 340 (N.D. Cal. 1990).  There, the district court granted summary judgment for the defendant after finding the OCC complaint did not equitably toll the statute of limitations.  The district court explained, "Here, there is no indication that plaintiff's OCC complaint qualifies as a formal, legal remedy designed to lessen the extent of the his [sic] injuries.  An OCC complaint is not intended to compensate an aggrieved individual; rather, it is the San Francisco Police Department's internal check on police misconduct." *Id.* at 343.  So too here.

This might be a different matter if, for instance, OIPA had told Avery that a legal remedy would be available to him or had in some way induced him not to file his civil rights claim in court. But plaintiff makes no such argument, and nothing in the record indicates this was the case.

Nor does plaintiff's brief address the argument that BART did not have notice because OIPA complaints are not communicated to BART Risk Management. *See* Opp'n at 6 (arguing, without

---

a claim of equitable tolling (rather than whether equitable tolling did in fact apply).

citation, that "Defendants were the same entity BART that the administrative complaint was submitted against" and that "Defendants had notice of the claims that were being brought in the Section 1983 suit"). At the hearing, plaintiff argued for the first time that BART was on "constructive notice" of his claim because of the filing of the OIPA complaint, though he cited no authority to support this assertion. The notice factor of the equitable tolling doctrine asks whether the defendant "was alerted to the need to gather and preserve evidence by the first claim . . . ." *See Cervantes*, 5 F.3d at 1276 n.3; *see also* Kathleen M. Banke & John L. Segal, Cal. Prac. Guide Civ. Pro. Before Tr. Stat. of Limitations ¶ 6:31 ("When considering whether timely notice was provided, 'courts focus on whether the party's actions caused the defendant to be fully notified within the [statute of limitations] of plaintiffs' claims and their intent to litigate.'") (citing *Saint Francis Memorial Hosp.*, 9 Cal. 5th at 726). Here, defendant has come forward with evidence showing that defendants were not on notice within the two-year period of plaintiff's intent to litigate a civil rights claim for monetary damages.[6] Plaintiff came forward with no admissible evidence in response. Under the facts of this case, plaintiff cannot sustain his burden to show equitable tolling applies.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motion for summary judgment because the complaint was not filed within the statute of limitations and equitable tolling does not apply.

**IT IS SO ORDERED**.

Dated: April 23, 2024

SUSAN ILLSTON
United States District Judge

---

[6] Plaintiff does not dispute that OIPA did not have the power to award monetary damages to plaintiff. The relief that plaintiff says would have been available through OIPA—to discipline the officers, to terminate them, to put a disciplinary note in their record—is not the relief that plaintiff seeks in this lawsuit.

9